Plaintiff's Name _Robert Monta_
Inmate No. 2048359
Address _Cerdo, Prctria_

**FILED**
DEC 23 2013
CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

**RECEIVED**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA
DEC 23 2013

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
DEPUTY CLERK
BY _____

_Robert Monta_
(Name of Plaintiff)

vs.

_Deputy District attorney_
_David ingram_
_Detective anderson - 625_
_Detective spower - 832_
_Bakersfield California News_
_23 news._
_Channel 23 News Channel_
(Names of all Defendants)

(Case Number) 3 CV - 0 2 1 1 0 LJO JLT

COMPLAINT

Civil Rights Act, 42 U.S.C. § 1983

I. Previous Lawsuits (list all other previous or pending lawsuits on back of this form):

A. Have you brought any other lawsuits while a prisoner? Yes ___ No ✓

B. If your answer to A is yes, how many? ___
   Describe previous or pending lawsuits in the space below.
   (If more than one, use back of paper to continue outlining all lawsuits.)

   1. Parties to this previous lawsuit:

   Plaintiff _None_

   Defendants _None_

   2. Court (if Federal Court, give name of District; if State Court, give name of County)
   _None_

   3. Docket Number _None_       4. Assigned Judge _None_

   5. Disposition (For example: Was the case dismissed? Was it appealed? Is it still pending?)

   6. Filing date (approx.) _None_       7. Disposition date (approx.) _____

1

## II.    Exhaustion of Administrative Remedies

A.    Is there an inmate appeal or administrative remedy process available at your institution?

Yes ✓  No___

B.    Have you filed an appeal or grievance concerning **ALL** of the facts contained in this complaint?

Yes ✓  No___

If your answer is no, explain why not_____ _No Respone_____

_____

_____

_____

C.    Is the process completed?

Yes ✓        If your answer is yes, briefly explain what happened at each level.
            _No Response_

_____

_____

No___        If your answer is no, explain why not.

_____

_____

_____

_____

**NOTICE:**    Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). If there is an inmate appeal or administrative remedy process available at your institution, you may not file an action under Section 1983, or any other federal law, until you have first completed (exhausted) the process available at your institution. You are required to complete (exhaust) the inmate appeal or administrative remedy process before filing suit, regardless of the relief offered by the process. Booth v. Churner, 532 U.S. 731, 741 (2001); McKinney v. Carey, 311 F.3d 1198, 1999 (9th Cir. 2002). **Even if you are seeking only money damages and the inmate appeal or administrative remedy process does not provide money, you must exhaust the process before filing suit.** Booth, 532 U.S. at 734.

## III. Defendants

(In Item A below, place the full name of the defendant in the first blank, his/her official position in the second blank, and his/her place of employment in the third blank. Use item B for the names, positions and places of employment of any additional defendants.)

A.    Defendant _David Ingram_ is employed as _Deputy District attorney_
            at _____

2

B.  Additional defendants _Bakersfield California News paper,_
_Channel 23 News Channel,_
_Channel 17 News Channel,_
_United Parramount Net work, Channel._
_univision Channel_

IV.  **Statement of Claim**

(State here as briefly as possible the facts of your case. Describe how each defendant is involved, including dates and places. Do not give any legal arguments or cite any cases or statutes. Attach extra sheets if necessary.)

_petitioner Monte contends invidious Discriminatory prosecution By Deputy District attorney David ingram showing prejudice to petitioner Monte. petitioner Monte contends Detectives ssoren #832 and Detectives A. anderson #625, "I utilized By Digital Recorder to "Record" my Conversation with monte, - " without his knowledge" and violated petitioner monte Constitutional Rights per 18-U.S.C. § 2515- Exclusionary Rule and posted petitioner picture on "the News paper" News paper, and several tv channels violating my Constitutional First amendment Rights are protected Ber the Constitution and By Federal Statute 18-U.S.C.S-2515 Exclusionary Rule._

V.  **Relief.**

(State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.)  _I am Requesting money Damages, for invidious Discrimination David ingram showing prejudice to petitioner monte, they violated petitioner monte Constitutional Rights for illegal Recording per-18-U.C.S.C. 2515-Exclusionary Rule "secret Recording"- Violated Exclusionary Rule, petitioner seeks money Damages._

I declare under penalty of perjury that the foregoing is true and correct.

Date _12-17-2013_          Signature of Plaintiff _Robert Monte_

(revised 6/01/04)

3

1  PETITIONER ROBERT MONTEZ CONTENDS, I WAS

2  TEXTING A BUDDY OF MINE ERICK RUIZ, AND HE TEXT ME BACK.

3  ASKING IF I HAD SEEN THE NEWS ON CHANNEL 23.

4  I DIDN'T PAY NO ATTENTION TO IT.

5  THREE HOURS LATER, I GET A DIFFERNT TEXT FROM MY WIFE,

6  YEVONNE MOLINA. SHOWING ME A PICTURE THAT CAME OUT ON

7  THE NEWS AND ON THE INTERNET.

8  AT THAT TIME MY HEART DROPPED WITH WORRY AND WONDER.

9  I WANTED TO COMMIT SUICIDE.

10  I WAS IN THE SHED IN THE BACK YARD AT THAT MOMENT.

11  I SEEN A MAN WITH A GUN AND A FLASH LIGHT AT 3:00 AM.

12  KNOCKING ON THE DOOR, SAYING "OPEN THE SHED DOOR IT'S B.P.D".

13  THEY TOLD ME PUT YOUR HANDS UP AND HANDCUFFED ME.

14  ROBERT ASKED WHAT AM I BEEN ARRESTED FOR AND THAT YOU

15  KNEW. ROBERT HAD NO CLUE WHAT HE WAS BEING ARRESTED FOR.

16  THE COPS STARTED MOCKING ME.

17  SOME ONE IDENTIFIED ME, ROBERTS PICTURE.

18  THEY THE COPS WOKE UP MY DAD AND TOLD ROBERTS DAD HE,

19  " COMMITTED A BURGLARY ".

20  TOLD ROBERTS DAD, ROBERT IS GOING TO JAIL.

21  THEY WENT INTO ROBERTS ROOM LOOKING FOR CLOTHES ROBERT

22  HAD ON IN THE PICTURE.

23  THEY THEN SAID THEY FOUND ALL THE EVIDENCE.

24  MEANING THE CLOTHES I WAS WEARING.

25  I CONTENEUED TO EXPLAIN THAT INDEED IT'S ME IN THE

26  PICTURE. BUT THAT THEY WERE STILL MAKING A MISTAKE.

27  THAT I DIDN'T COMMIT ANY CRIME.

28

1  THEY SAID THAT THEY HAD MY PICTURE GOING INTO A PLACE.

2  AND THAT I KNEW WHAT THEY WERE TALKING ABOUT.

3  THEY PROCEEDED I CONTENUED TO TELL THEM THAT THEY ARE

4  MAKING A MISTAKE.

5  THEY SAID THAT I WAS PLAYING STUPID, AND THAT THEY GOT ME

6  ON CAMERA. I TOLD THEM THAT THEY NOW GOT ME KICKED OUT

7  OF MY DAD'S HOUSE LEAVING ME HOMELESS.

8  THEY PROCEEDED TOLD ME TO "SHUT THE FUCK UP" AND THAT I WAS

9  GOING TO PRISON. I TOLD THEM NO I WASN'T THAT I DIDN'T DO

10 ANYTHING WRONG. THEY ARRESTED ME BOOKING ME FOR A

11 PLACE CALL LITTERS KRITTERS. I THEN JUST KEPT MY MOUTH

12 SHUT. FOR A SEGMENT OF TIME, WITHIN MINUTES THEY ASKED

13 ME IF I HAD EVER BEEN TO LITTERS WITHOUT KRITTERS, I SAID NO.

14 ME NOT KNOWING THE LOCATION OF THE PLACE BECAUSE THERE

15 IS NO SIGN OR ANYTHING INDICATING WHERE OR WHAT THE

16 PLACE IS. A DETECTIVE CAME TO SEE ME AT JAIL PULLED ME

17 IN A ROOM TO QUESTION ME THERE WAS TWO OF THEM WHOM

18 I DON'T KNOW THE NAMES OF THE REPORT INDICATES.

19 FIRST STATEMENT WAS FROM ME. I SAID I'M INNOCENT FROM

20 THE CHARGES. HE SAID WILL SEE. HE BEGAN TO EXPLAIN

21 THAT THE AREA HAD BEEN BURGLARIZED IN A FACILITY THAT

22 OTHER PLACES HAD BEEN BROKEN INTO,

23 LITTERS KRITTERS WAS I WAS BEING ARRESTED FOR,

24 I TOLD HIM I DIDN'T EVEN KNOW WHERE IT WAS AT.

25 HE SHOWED ME PICTURES OF ME WALKING BY THE AREA.

26 I TOLD HIM THAT YES IT WAS ME WALKING BY THE AREA.

27 THAN HE SAID THAT CAMERAS HAVE ME WALKING BY WITH A

28

1  BOLT CUTTERS. I TOLD THEM WHAT I WAS DOING THERE AND
2  THAT IT HAD NOTHING TO DO WITH BREAKING INTO LITTERS
3  KRITTERS. THAT I DIDN'T WANT TO EXPLAIN OR TO
4  INCRIMINATE MY SELF BUT I CUT A FENCE IN ANOTHER
5  AREA OR PROPERTY ON SOME STORAGE AREA WHERE MY
6  BELONGINGS WERE. AT. WHOM AN OLD FRIEND NAME PAUL
7  GONZALES HAD. THAN HE STATED THAT THE FENCE WAS
8  INDEED CUT. HE THEN PROCEEDED TO BRING UP OTHER
9  CHARGES. I TOLD HIM I WAS INNOCENT OF THEM.
10  AND THAT I DIDN'T BELONG THERE ARRESTED, THAT I
11  DIDN'T DO IT. THAT THEY HAD THE WRONG PERSON.
12  HE SHOWED ME PICTURES AND SAID THERE WAS A BLACK MALE
13  AND IF I KNEW HIM. SHOWED ME PICTURES OF A WHITE
14  CAR AND BLACK MALES AND ASKED IF I KNEW THEM.
15  I SAID NO, I TOLD HIM I WANTED TO GO.
16  HE SAID THEY HAD THUMB PRINTS.
17  I SAID GOOD THEN YOU'LL KNOW IT'S NOT ME WHO BROKE
18  INTO THAT PLACE. I ASKED WHEN HE WOULD GET
19  THE RESULTS OF THUMB PRINTS, HE SAID TWO WEEKS.
20  I SAID IN TWO WEEKS I WANT TO BE RELEASED
21  BECAUSE I DIDN'T DO IT.
22
23
24  DeC, 17, 2013
25
26
27
28



**BAKERSFIELD POLICE DEPARTMENT**
Case 1:13-cv-02110-LJO-JLT   Document 1   Filed 12/23/13   Page 7 of 9
**GENERAL OFFENSE HARDCOPY**
COURT COMPLAINT COPY

GO# 2013-193637 PATROL ARREST            2203-1 BURGLARY-FORCED-BUSINESS

## Related Text Page(s)

Document: **Investigator Follow Up**
Author: **832 - SPORER, KENNETH**
Related date/time: Oct-28-2013 (Mon.) 1652

On 10-28-13, at about 0800 hours, I was informed that a subject, ROBERTO MONTEZ, was in custody in regards to the burglary that occurred on 9-18-13, _____
_____ or additional details regarding the arrest, refer to Officer Felgenhauer's supplemental report accomplished under this same case number.

On 10-28-13, at about 0900 hours, Detective G. Anderson #625 and I responded to the Downtown Jail Central Receiving facility at 1415 Truxtun Avenue to contact ROBERTO MONTEZ in regards to this case.

MONTEZ was escorted into an interview room by a jail deputy. Detective Anderson and I then entered the room along with MONTEZ. Detective Anderson stood by while I spoke with MONTEZ. I utilized by digital recorder to record my conversation with MONTEZ without his knowledge. I later downloaded the recording into DIMS. The following is a summary of my interview.

I identified myself to MONTEZ and explained to him why I wished to speak with him. I then advised him of his Miranda rights which he agreed to waive. I explained to MONTEZ that I first wanted to question him about the offense that he had just been arrested for. I asked MONTEZ if he had seen the photograph that had been previous released to the news media. MONTEZ said he saw the photograph on the news. I also showed MONTEZ a printout of the photograph (which was later booked as evidence) and he looked at the photograph and said it was him in the photograph.

I told MONTEZ that I had video footage of him committing the offense. MONTEZ denied throwing the rock thru the window and entering the business. MONTEZ admitted he was at the business and admitted it was him in the video in possession of the red bolt cutters. He admitted he placed the bolt cutters under the bushes and later retrieving them. MONTEZ also admitted that he cut the back fence which leads from the business parking lot into a storage facility property. MONTEZ said he cut the fence because he intended to enter the storage facility in

# KERN COUNTY SHERIFF'S DEPARTMENT
## FIELD ARREST DATA

CRIME CASE #  13-193137

NAME (LAST, FIRST MIDDLE SUFFIX)
Montez, Roberto Ramirez

2048359  10-30-13

AKA

| | RACE | SEX | DATE OF BIRTH | HEIGHT | WEIGHT | HAIR | EYE |
|---|---|---|---|---|---|---|---|
| | H | M | 4-24-1974 | 5'8 | 180 | Brn | Brn |

| SOCIAL SECURITY | DRIVER'S LICENSE # | ST | EXPIRE DATE | PLACE OF BIRTH CITY | ST |
|---|---|---|---|---|---|
| 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 | A7676502 | CA | | BAKERSFIELD | CA |

| NUMBER | DIR | STREET NAME | TYPE | UNIT | UNIT ID | CITY | ST | ZIP CODE |
|---|---|---|---|---|---|---|---|---|
| 3908 | | Ivy Wood | Ct | | | Bakersfield | CA | 93309 |

RESIDENCE PHONE  748-2371

EMPLOYER (NAME, ADDRESS)

OCCUPATION

TYPE OF ARREST: [X] FELONY  [ ] MISDEMEANOR  [ ] WARRANT  [X] OPEN  [ ] COMMITMENT  [ ] REMAND  [ ] DETOX  [ ] REMOVAL ORDER

| CODE | SECTION | COUNTS | DESCRIPTION | CODE | SECTION | COUNTS | DESCRIPTION |
|---|---|---|---|---|---|---|---|
| PC | 460(b) | 1 | Burglary | | | | |

COURT CASE NUMBER

COURT AND DIVISION  SCBAK

FOREIGN AGENCY NAME AND STATE

| LOCATION OF ARREST | CITY | ARREST DATE | TIME | AREA CODE | ARRIVAL DATE | TIME |
|---|---|---|---|---|---|---|
| 3908 IVYWOOD CT | BAK | 10-28-13 | 0045 | | 10/28/13 | 0053 |

| | BADGE# | DEPARTMENT | NAME | | |
|---|---|---|---|---|---|
| ARRESTING OFFICER | 1021 | BPD | J. Felgenhauer | | |
| TRANSPORTING OFFICER | // | // | // | | |
| RECEIVING OFFICER | 1359 | KCSO | Tomas | | |

WATCH  N

| | | RINGS | N |
|---|---|---|---|
| KEYS | N | OPR LIC [✓] | PURSE [N] |
| WALLET | [Y] | SS CARD [Y] | |
| KNIFE | [N] | GLASSES [N] | |

MISCELLANEOUS PROPERTY  BELT  ROSARIE

MONEY: $ 157.35

DETOX NO.

ARRESTEE SIGNATURE

VEHICLE: NONE [✓]  LEFT AT SCENE [ ]

VEHICLE TOWED TO

| | YES | NO |
|---|---|---|
| INVOLVED IN TRAFFIC ACCIDENT | | ✓ |
| PHYSICAL FORCE USED TO EFFECT ARREST | | ✓ |
| CAROTID HOLD PLACED | | ✓ |

ADDITIONAL HOLDS

## PROBABLE CAUSE DECLARATION

48 HR EXPIRATION DATE/TIME  10/30/13  0045

OFFICERS RESPONDED TO A BUSINESS BURGLARY ON 9/17/13 THEFT WAS VIDEO
SURVEILLANCE OF THE OFFENSE. A PRESS RELEASE WAS GENERATED WITH A
PICTURE OF THE SUSPECT. OFFICERS RECEIVED AN ANONYMOUS TIP OF THE
SUSPECTS IDENTITY. OFFICERS CONDUCTED A PROBATION SEARCH AT MONTEZ'
RESIDENCE WE LOCATED THE CLOTHING WORN DURING THE OFFENSE IN HIS
ROOM MONTEZ ALSO MATCHED THE DESCRIPTION OF THE SUSPECT.

I declare under penalty of perjury that the foregoing is true and correct to the best of my information and belief.

Executed on: 10/28/13  at Kern County, CA By: _____ #1021
Date                Signature of declaring officer

On the basis of  [ ] the foregoing declaration  [✓] attached reports
[ ] telephonic declaration

I hereby determine that  [ ] there is  [ ] there is not  probable cause to believe this arrestee has committed a crime.

DATE          TIME          MAGISTRATE

0800 CA
10-28-13

Sheriff's Facility 580.2320.008 (Rev. 3/92)


I escorted MONTEZ to the rear of my patrol vehicle and had him sit down. I advised him of his Miranda rights which he said he understood and waived by speaking with me. I recorded his statement without his knowledge. The following is a synopsis of his statement. I asked him if he knew why he was being arrested and he said no. I advised him of his charges. I asked him where he was on September 18, 2013 in the evening to morning hours. He said he thought he was incarcerated in the Kern County Jail. I advised him I had conducted a records check and found he was not in jail during that time. I noted he had been released from custody in April of this year. I asked if he had any knowledge of the offense and he said he did not and that I had the wrong guy. I asked him if he had ever been to the victim business and he said no. He continued to deny any knowledge about the offense and I ended my interview with him.

It should be noted, while in the residence, Sergeant Eddy #907 showed both ROBERTO MONTEZ' father JOE MONTEZ and his brother JORGE MONTEZ the photograph from the news release of the suspect. Both JORGE and JOE MONTEZ advised they recognized the subject in the picture to be ROBERTO MONTEZ.

Due to the fact we located clothing matching the clothing worn during the offense and the fact that three different people identified ROBERTO MONTEZ as the suspect in the picture he was arrested for burglary. I transported him and booked him into the KCSO jail for violation of P.C. 460(b) - burglary.